IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>DERRICK PARKS,<br><br>            Defendant. | CRIMINAL ACTION<br>NO. 17-296-01 |

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　February 1, 2021

### I.　INTRODUCTION

Defendant Derrick Parks ("Defendant"), who is serving a 110-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In his Motion, Defendant requests a reduction of his sentence to time served. He argues that the Court should grant his motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions place him at an increased risk of harm from the COVID-19 virus. Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he is no longer a danger to society and has many accomplishments while incarcerated. The Government opposes Defendant's Motion, citing Defendant's criminal history, the severity of his underlying offenses, his ability to effectively manage his health conditions while incarcerated, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities. For reasons that follow, Defendant's Motion will be denied.

1

II.     BACKGROUND

    A.     **Defendant's Prior Convictions and Criminal History**

Defendant is presently incarcerated for "leading a conspiracy to obtain oxycodone pills for illegal street distribution[,]" in violation of 21 U.S.C. § 846. (Doc. No. 133 at 2.) In 2012, while Defendant was on state parole and federal supervised release, he participated in the instant conspiracy wherein he used blank prescriptions obtained from "[a] friend who worked in a doctor's office" to forge prescriptions for oxycodone to be filled at pharmacies. (Id.) Defendant would then recruit and pay people to go into the pharmacies and obtain the oxycodone pills. (See id.) He eventually "collected the drugs—at least 9,513 oxycodone 30mg pills—for distribution." (Id.)

Defendant has a lengthy criminal history. (See Doc. Nos. 132, Ex. B at 28-29; 133 at 1-2, 12-13.) His first arrest occurred at age twelve. (Doc. No. 132, Ex. B at 28). At age fourteen, he was "adjudicated delinquent for the first time." (Doc. No. 133 at 1.) As an adult, Defendant served approximately 13 years in prison following an aggravated assault conviction for shooting a man in 1993. (See id. at 12-13.) Around the same time, Defendant was sentenced to 90 months in federal prison after he was convicted of "participat[ing] in a major [cocaine] trafficking organization, as part of which he was involved in the shooting of another man." (Id. at 13; see also id. at 1.)

After his incarceration and while on state parole for aggravated assault and federal supervised release for his participation in cocaine trafficking, Defendant conspired to distribute oxycodone for which he is presently incarcerated. (See id. at 13.) In January 2013, Defendant was also "separately convicted of possession of a firearm by a felon" for which he served 57 months in federal prison. (Id.; see also id. at 1.) On October 31, 2018, while Defendant was

serving his 57-month federal sentence, he pled guilty to conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846. (See id. at 1-2, 13; Doc. No. 132 at 3.)

On June 18, 2019, following his guilty plea to distribution of oxycodone, Defendant was sentenced to 110 months' imprisonment followed by three years' supervised release for another conspiracy, this time to distribute oxycodone, in violation of 21 U.S.C. § 846. (See Doc. Nos. 132 at 3; 133 at 2.) Defendant has served approximately 31 months of his sentence,[1] which is just under thirty percent of his total term of imprisonment, and his anticipated release date is July 12, 2026. (See Doc. No. 133 at 2.) He is serving his sentence at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). (See id.) Defendant notes that while incarcerated, he has worked towards his rehabilitation by "completing drug programs[] and participating in educational and wellness courses[.]" (Doc. No. 132 at 16; see also id., Ex. C.) Moreover, Defendant's last disciplinary infraction occurred in 2002. (See Doc. No. 133 at 2.)

    **B.    Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the Government's Response**

On August 19, 2020, Defendant sent a request for compassionate release to the Warden of FCI Otisville, which was denied on October 23, 2020. (See Doc. Nos. 132 at 2; 133 at 2.) On November 23, 2020, Defendant filed the instant pro se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that his sentence be reduced to time served. (See Doc. No. 132 at 1, 21.) Included with his Motion are copies of his BOP individualized needs plan and education records, which detail Defendant's participation in drug treatment programming and other courses. (See id., Ex. C.)

---

[1] Defendant has served approximately 27 months of his 110-month sentence and has received approximately 4 months credit for good conduct. (See Doc. No. 133 at 2.)

3

In his Motion, Defendant contends that his Type 2 diabetes, obesity, and sleep apnea place him at an "increased risk of severe illness" if he were to contract COVID-19. (Id. at 12.) He argues that these medical conditions and the ongoing pandemic, combined with the conditions at FCI Otisville, are extraordinary and compelling reasons that warrant his release. (See id.) Moreover, Defendant avers that a modification of his sentence is consistent with the § 3553(a) sentencing factors because he accepts responsibility for his actions, has worked to rehabilitate himself while in prison by attending educational and vocational training courses, obtaining his GED, "completing drug programs, and participating in education[] and wellness courses[.]" (Id. at 16; see also id., Ex. C.) He also states that he has an "extraordinary network of family and friends" and an outstanding job offer from the owner of a Philadelphia-based autobody business. (Id. at 16.) In further support of his § 3553(a) argument, Defendant points to the "glaring[,] unwarranted disparity between [Defendant's] sentence" and the sentences of his co-Defendants.[2] (Id. at 18.)

On January 4, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 133.) In its Response, the Government concedes that Defendant's diabetes is an extraordinary and compelling reason for his compassionate release. (See id. at 11.) Despite this concession, the Government opposes compassionate release, (see id. at 12-16), arguing that Defendant can manage his diabetes and other medical conditions while incarcerated and that the

---

[2] In 2019, the Court sentenced co-defendants Tyhaera Bynum and Makia Rodgers to one day of imprisonment followed by four years' supervised release after they each pled guilty to one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846. (See Doc. Nos. 106, 108.) Bynum and Rodgers played a lesser role in the conspiracy and had less culpability than Defendant. (See Doc. No. 133 at 2, 13.)

4

§ 3553(a) sentencing factors "show[] that release at this point is inappropriate[.]" (Id. at 13.) In discussing the § 3553(a) sentencing factors, the Government submits that Defendant should serve his full sentence because his criminal history and continued violations show he is a danger to the community. (See id. at 1-2, 12-13.) The Government supplements its argument with a discussion on the BOP's response to the COVID-19 pandemic. (See id. at 3-7.) It also submits that the "BOP's aggressive efforts have been successful thus far at FCI Otisville[,]" despite several confirmed cases of COVID-19 among inmates and staff at the facility. (Id. at 7.)

### III. DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[3] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

---

[3] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

5

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>>
>> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

Here, Defendant has met the exhaustion requirement before filing his Motion. On August 19, 2020, he sent a request for compassionate release to the Warden at FCI Otisville, and the Warden denied his request on October 23, 2020. (See Doc. No. 133 at 2.) On November 23, 2020, just over thirty days after this denial, Defendant filed his Motion seeking compassionate release. (Doc. No. 132.) Because at least thirty days lapsed from the date when the Warden received Defendant's request and denied it to the date when Defendant filed his Motion, he has met the exhaustion requirement.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13, App. Note 1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amytrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii) The defendant is—
>
>         (I) suffering from a serious physical or mental condition,
>
>         (II) suffering from a serious functional or cognitive impairment, or
>
>         (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant
>
>     (i) is at least 65 years old;
>
>     (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>
>     (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family circumstances.

7

>   (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[4]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotations omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)).  In the Third Circuit, this means that "the mere existence of COVID-19 in society and the

---

[4] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596.  Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction.  See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence.  Not every factor is applicable, however, when considering a motion for compassionate release.  In the instant case, the applicable factors are:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)  the need for the sentence imposed—

        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
>    . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion for Compassionate Release will be denied. Despite the Government's concession that Defendant's diabetes is an extraordinary and compelling reason for his release, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[5] Each matter is discussed seriatim.

#### 1. Defendant's Diabetes May Present an Extraordinary and Compelling Reason for His Release

Defendant contends that he has shown an extraordinary and compelling reason for his release because his diabetes, obesity, and sleep apnea "put him at an increased risk [of severe illness] if he contracts COVID-19" while incarcerated at FCI Otisville. (Doc. No. 132 at 12; see also id. at 13.) Of these three medical conditions, the Government submits that Defendant's alleged obesity and sleep apnea do not establish the required particularized vulnerability to COVID-19

---

[5] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

10

and its effects to constitute an extraordinary and compelling reason for his release. (See Doc. No. 133 at 3, 11-12, 14-16.) The Government concedes, however, that Defendant's Type 2 diabetes meets the U.S.S.G. § 1B1.13 Application Note 1(A) definition of extraordinary and compelling reasons for release. (See id. at 11.) This condition is a risk factor identified by the Centers for Disease Control and Prevention ("CDC") "as increasing the risk of an adverse outcome from COVID-19[.]"[6] (Id.)

For purposes of this Motion, the Court will assume Defendant's Type 2 diabetes presents an extraordinary and compelling reason for his compassionate release in light of the COVID-19 pandemic. Because the Government concedes that Defendant's diabetes presents an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold.[7] However, the Court notes that other courts have rejected claims of extraordinary and compelling reasons for compassionate release based on obesity and

---

[6] There is an actual, non-speculative risk of contracting COVID-19 at FCI Otisville. In the Government's Response in Opposition to Defendant's Motion filed on January 4, 2021, the Government stated that there were three present COVID-19 cases among inmates and five present cases among staff members at FCI Otisville. (See Doc. No. 133 at 7.) As of the date of the filing of this Opinion, three inmates and ten staff members have tested positive for COVID-19 at FCI Otisville. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Feb. 1, 2021), https://www.bop.gov/coronavirus/. Furthermore, twenty-four inmates and fifteen staff members have recovered from the virus. See id. These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." Id. (emphasis omitted). Given this increase in confirmed cases among staff members, COVID-19 may be present, to a significant degree, at FCI Otisville. However, the Court notes that the BOP has implemented precautions to quarantine infected and symptomatic inmates to contain the virus's spread. (See Doc. No. 133 at 3-7.)

[7] The CDC notes that a Body Mass Index ("BMI") of 30 kg/m$^2$ or greater—which constitutes obesity—is an actual COVID-19 risk factor, while a BMI between 25-30 kg/m$^2$—which constitutes being overweight—is only a potential risk factor. See People with Certain Medical Conditions, CENTERS FOR DISEASE AND CONTROL PREVENTION (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant has a BMI of 28.4 kg/m$^2$. (See Doc. No. 134 at 18.) Because Defendant does not have a BMI of at least 30 kg/m$^2$, he is not considered to be obese.

sleep apnea. See, e.g., United States v. Williams, No. 15-471, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 kg/m$^2$ does not meet extraordinary and compelling reasons for release); United States v. Whiteman, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release); United States v. Grasha, No. 18-325, 2020 WL 5747829, at *5 (W.D. Pa. Sept. 24, 2020) (concluding intermittent sleep apnea "does not arise to an extraordinary and compelling reason for release"); United States v. Davenport, No. 08-424, 2020 WL 3432630, at *3 (M.D. Pa. June 23, 2020) (stating that "obstructive sleep apnea" is not listed by the CDC as a "risk factor" that increases the likelihood for severe illness from COVID-19).[8]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's diabetes presents an extraordinary and compelling reason for his release, the relevant § 3553(a) factors do not support the reduction of Defendant's sentence to time served. As a threshold matter, other courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief. See, e.g., United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions, including sickle-cell disease [and type 2 diabetes], present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic"); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4

---

[8] Defendant is forty-eight years old. (See Doc. No. 132 at 2.) He does not suffer from a terminal illness or a serious cognitive impairment, and he is not the caregiver of children. (See id. at 8). Thus, the factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(B)-(C), are not relevant here.

(E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence . . . ."); United States v. Daniels, No. 15-127, 2020 WL 4674125, at *2-3 (E.D. Pa. Aug. 12, 2020) (denying compassionate release despite Government's concession that defendant's obesity was an extraordinary and compelling reason for release); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant sentencing factors weigh against Defendant's release at this time.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1).  In pleading guilty to the offense for which he is presently incarcerated, Defendant admitted to leading a conspiracy to obtain oxycodone using fraudulent prescriptions, which "put thousands of addictive pills on the street" for illegal distribution.  (Doc. No. 133 at 13; see also Doc. No. 87 at 8-9.)  He also has an extensive criminal history which includes prior incarceration for shooting a man in 1993, and prior convictions for his participation in a cocaine trafficking organization and for possession of a firearm by a felon.  (See Doc. No. 133 at 1-2, 12-13.) Furthermore, Defendant has shown a propensity to commit crimes while on supervised release, as he organized the conspiracy to distribute oxycodone while on supervised release for his prior federal drug trafficking conviction.  (See id. at 13.)  Additionally, while on supervised release, Defendant was "caught with a firearm by police conducting a traffic stop."  (Id. at 1.)  Given all this background, there is no assurance that Defendant would be deterred from committing additional crimes if released.  In sum, he is still a danger to the community.

Second, the Court has also considered whether Defendant's release would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served approximately thirty percent of his total sentence. (See Doc. No. 133 at 13). The magnitude of his crimes, however, warranted the sentence he received.[9] Although Defendant expresses remorse and accepts responsibility for his actions, (see Doc. No. 132 at 1, 15), a reduction in his sentence at this point would not serve any of the above considerations.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant. See § 3553(a)(6). The combination of Defendant's extensive criminal history and the seriousness of his offense resulted in his 110-month sentence. Notably, this sentence is below the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities. Here, the applicable guideline range prescribed a sentence of 168 to 210 months' imprisonment. At sentencing, Defendant moved for a downward variance, which the Government did not oppose. The Court thus varied downward from the guideline range when it sentenced Defendant to 110 months' imprisonment. (See Doc. No. 114.) Moreover, unlike his co-conspirators, Defendant pled

---

[9] In United States v. Pawlowski, the Third Circuit held the following regarding § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).

guilty to his leadership role in the conspiracy to distribute oxycodone, which explains his lengthier sentence. (See Doc. No. 133 at 2, 13.) Therefore, a reduction in Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

Based on these considerations, none of the applicable § 3553(a) factors favor Defendant's sentence reduction to time served.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 132) will be denied. An appropriate Order follows.