IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| DERRICK PARKS, | NO. 17-296-01 |
| Defendant. | |

**OPINION**

**Slomsky, J.**                                                                                                           **April 21, 2023**

I. **INTRODUCTION**

Defendant Derrick Parks ("Defendant"), who is serving a 110-month sentence, moves for compassionate release.[1] (Doc. No. 141.) In his Motion, Defendant asks the Court to either (1) reduce his sentence to time served based on extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(A) or (2) transfer him to home confinement under Section 12003(b)(2) of the CARES Act. (Id. at 1.) He argues that the Court should grant his Motion because his underlying health conditions place him at an increased risk of contracting COVID-19 and because he would face fatal complications if he were to contract it. (Id.) Defendant further contends that his release would be consistent with the relevant 18 U.S.C. § 3553(a) sentencing factors because he is no longer a danger to society but rather an advocate for recovery, treatment, and support. (Id. at 2.)

The Government opposes Defendant's Motion, citing his criminal history, his refusal to accept a COVID-19 booster vaccine, and his current good health. (Doc. No. 143.) Additionally, the Government maintains that the Court does not have the authority to grant a transfer to home

---

[1] This is Defendant's second Motion for Compassionate Release. He filed his first Motion on Nov. 23, 2020. (Doc. No. 132.) It was denied on Feb 2, 2021. (Doc. Nos. 138, 139.) No appeal was taken.

1

confinement. (Id. at 2.) For reasons that follow, Defendant's Motion (Doc. No. 141) will be denied.

## II. BACKGROUND

### A. Defendant's Prior Convictions and Criminal History

Defendant is presently incarcerated at the Federal Correctional Institution in Otisville, New York ("FCI Otisville") for leading a conspiracy to obtain oxycodone pills for illegal street distribution. (Doc. No. 143 at 1.) In 2012, he participated in the conspiracy while on parole and supervised release. (Doc. No. 133 at 13.) Defendant received blank prescriptions from a friend who worked in a doctor's office and filled them out with fake orders for oxycodone pills. (Id. at 2.) He would then pay people, who are referred to as pseudo-patients, to go into pharmacies to obtain the pills. (Id.)

This case does not represent Defendant's first offense. Rather, Defendant has a lengthy criminal history, beginning with being adjudicated a delinquent at age fourteen. (Doc. Nos. 132, Ex. B at 28; 133 at 1.) In 1993, as an adult, he was convicted of aggravated assault for shooting someone and served approximately 13 years imprisonment. (Doc. No. 133 at 12-13.) Around the same time, he also was convicted of participating in a major drug trafficking organization and was sentenced to 90 months in federal prison. (Id. at 13.)

Next, while on state parole for aggravated assault and on supervised release for his federal conviction, Defendant took part in the conspiracy for which he is presently incarcerated. (Id.) Additionally, in January 2013, Defendant was convicted of possession of a firearm by a felon, for which he served 57 months in federal prison. (Id.) In this case, as noted above, Defendant pled guilty to conspiracy to distribute oxycodone and was sentenced to 110 months' imprisonment. (Id. at 2.) He is serving his sentence at FCI Otisville, with an anticipated release date of August 8,

2026.  (Doc. No. 143 at 1.)  Defendant notes that while incarcerated, he has shown rehabilitation by attending educational and vocational training classes and wellness courses and by completing the General Educational Development ("GED") test.  (Doc. No. 141 at 2.)  Moreover, Defendant has not had a prison disciplinary infraction since 2002.  (Doc. No. 133 at 2.)

### B. Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

On August 19, 2020, Defendant sent a request for compassionate release to the Warden of FTI Otisville, which was denied on October 23, 2020.  (See Doc. Nos. 132 at 2; 133 at 2.)  On November 23, 2020, Defendant filed a pro se Motion for Compassionate Release requesting that his sentence be reduced to time served, which was denied on February 2, 2021.  (See Doc. Nos. 132 at 1; 138 at 1.)  On August 2, 2022, Defendant filed the instant pro se Motion for Compassionate Release requesting that (1) his sentence be reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), or (2) he be transferred to home confinement under Section 12003(b)(2) of the CARES Act.  (Doc. No. 141 at 1.)  Included with his Motion is a copy of an offer letter for a job that apparently will be available to him upon release.  (Id. at 3.)

In his Motion, Defendant states that his health is at high risk if he contracts COVID-19 due to his underlying health conditions of diabetes, hypertension, and Vitamin D deficiency.  (Id. at 1.)  Defendant claims that he is particularly vulnerable to contracting the virus because he cannot maintain a safe social distance from others in his prison facility.  (Id.)  He contends that his medical conditions, which make him "uniquely vulnerable," and the ongoing pandemic, combined with the physical conditions at FCI Otisville that keep him from social distancing, are extraordinary and compelling reasons that warrant his release.  (Id.)  In the alternative, Defendant argues that he should be placed on home confinement pursuant to the CARES Act because the COVID-19

3

emergency materially affects the functioning of the United States Bureau of Prisons and his exposure to the virus. (Id.)

Additionally, Defendant contends that a modification of his sentence is consistent with the Section 3553(a) sentencing factors. (Id. at 2.) Defendant states that he has accepted responsibility for his actions and has worked to rehabilitate himself while in prison by attending educational and vocational training courses and wellness and drug programs. (Id.) Further, he notes that he has completed the GED test. (Id.) Defendant also argues that he has an "extraordinary network of family and friends" and an outstanding job offer as a guidance counselor with a non-profit organization that provides at-risk Philadelphia residents with opportunities to better their lives. (Id. at 2-3.)

### C. The Government's Response in Opposition to Defendant's Motion for Compassionate Release

On November 7, 2022, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 143.) The Government argues that there are no extraordinary and compelling reasons for his compassionate release because vaccines are available and have been proven effective. (Id. at 2-3.)

The Government notes that Defendant has been vaccinated with two Pfizer doses. (Id.) Vaccines have been proven effective and courts across the country have routinely denied relief to vaccinated inmates. (Id. at 4.) Moreover, Defendant has been offered a Moderna booster, which he has refused to take. (Id. at 2.) The Government claims this refusal is a reason to deny his Motion because courts have held that a prisoner may be denied compassionate release on the ground that the prisoner has declined to be vaccinated. (Id. at 6.)

The Government also submits that Defendant tested positive for COVID-19 in January 2022 and was isolated for ten days, during which he remained asymptomatic. (Id.) Regarding

Defendant's health, the Government contends that he remains in good health, as reflected by his most recent medical appointment on October 14, 2022. (Id. at 7.) Given these developments, the Government submits that while Defendant has risk factors that make him more vulnerable to COVID-19, they are not controlling. (Id. at 3.) The Government further notes that the Section 3553(a) sentencing factors do not warrant Defendant's release because his criminal history and continued violations show that he is a danger to the community. (See Doc. No. 133 at 12.)

### III.  DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to Section 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, Section 3582(c)(1)(A). As amended by the recently enacted First Step Act, Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[2] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

---

[2] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See 18 U.S.C. § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On August 19, 2020, he sent a request for compassionate release to the Warden at FCI Otisville, and the Warden denied his request on October 23, 2020. (See Doc. No. 133 at 2.) On November 23, 2020, over thirty days after this denial, Defendant filed his Motion seeking compassionate release. (Doc. No. 132.) Because at least thirty days lapsed from the date when the Warden

may reduce the terms of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—

>    (i) extraordinary and compelling reasons warrant such a reduction;
>    . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under Section 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . .
>
>    (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>        . . .
>    (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

received Defendant's request and denied it to the date when Defendant filed his Motion, he has met the exhaustion requirement.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition; (2) age; or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii) The defendant is—
>
>         (I) suffering from a serious physical or mental condition,
>
>         (II) suffering from a serious functional or cognitive impairment, or
>
>         (III) experiencing deteriorating physical or mental health because of the aging process,
>
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant
>
>     (i) is at least 65 years old;
>
>     (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>
>     (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

7

  (C) Family circumstances.

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's souse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[3]

  The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (internal quotation marks omitted) (quoting United States v. Fox, No. 14-03, 2019 2019 WL 3046086, at *3 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warning a sentence reduction under § 3582(c)(1)(A). See id. at 395.

  In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v.

---

[3] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation marks omitted) (quoting United States v. Brooks, No. 07-20047, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history of the characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

 . . . [and]

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the Section 3553(a) factors supports a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will be Denied

Defendant's Motion for Compassionate Release to reduce his sentence to time served or transfer him to home confinement will be denied. Defendant has not presented any extraordinary and compelling reason for his release, and the relevant Section 3553(a) factors weigh against a reduction or modification of his sentence.[4] Additionally, regarding Defendant's transfer to home confinement, the Government is correct that this Court does not have the authority to grant such a transfer under the CARES Act. Each defense argument is discussed seriatim.

#### 1. Defendant Has Not Shown an Extraordinary and Compelling Reason for His Release

---

[4] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

To begin, none of Defendant's medical conditions present an extraordinary and compelling reason for his release. Defendant contends that he has shown an extraordinary and compelling reason for his release because his diabetes, hypertension, and Vitamin D deficiency put him at an increased risk for fatal complications if he were to contract COVID-19 while incarcerated at FCI Otisville. (Doc. No. 141 at 1.) In the Response in Opposition, however, the Government notes that Defendant tested positive for COVID-19 on January 25, 2022, and remained entirely asymptomatic. (Doc. No. 143 at 2.) The Government also states that as of his most recent full check-up on October 14, 2022, Defendant was in good health. (Id. at 7.)

Additionally, the Government argues that given the development of effective vaccines, the fact that Defendant has risk factors for severe COVID-19 disease is not dispositive as vaccines decrease the risk of serious illness or death from COVID-19 infection. (Id. at 3.) The Government further explains that Defendant has been fully vaccinated, having received two Pfizer doses. (Id. at 2.) And he was offered a Moderna booster, which he refused to take. (Id.) The Court is persuaded by the Government's argument that Defendant's vaccinations decrease the risk of serious illness or death from COVID-19 infection and, therefore, that his medical conditions do not warrant compassionate release.

Courts have routinely denied relief to an inmate who has been vaccinated or denies vaccination. See e.g., United States v. Hannigan, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (stating that vaccination against COVID-19 lessens the risk of serious illness or death, such that the threat of COVID-19, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release); United States v. Berry, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (finding that while the defendant suffered from conditions making him more vulnerable to serious illness or death

from COVID-19, his vaccination status provided sufficient protection against the risks); United States v. Singh, 525 F. Supp. 3d 543, 548 (M.D. Pa. 2021) (concluding that because Defendant's vaccination mitigated the risk of COVID-19, his underlying medical conditions of type 2 diabetes, obesity, and hypertension, no longer presented extraordinary and compelling reason for compassionate release).[5]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant Section 3553(a) factors do not support the reduction of Defendant's sentence to time served. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). In pleading guilty to the offense for which he is presently incarcerated, Defendant admitted to leading a conspiracy to obtain oxycodone using fraudulent prescriptions, which placed thousands of addictive pills on the street for illegal distribution. (Doc. No. 133 at 13.) Further, Defendant has an extensive criminal history, which includes prior incarceration for shooting a man in 1993 and prior convictions for participation in a cocaine trafficking organization and for possession of a firearm by a felon. (Id. at 1-2, 12-13.) Additionally, Defendant has shown a propensity to commit crimes while on supervised release. For example, he organized the instant conspiracy to distribute oxycodone while on supervised release for his prior federal drug trafficking conviction. (Id. at 13.) Defendant was also caught with a firearm while on supervised release. (Id. at 1.) Given this background, there is no assurance that Defendant would refrain from criminal activity if released. He still poses a danger to the community.

---

[5] Defendant is about fifty years old. He does not suffer from a terminal illness or a serious cognitive impairment, and he is not the caregiver of children. (See Doc. No. 132 at 8). Thus, the factors listed in the Sentencing Guideline Manual, see U.S.S.G. § 1B1.13 n.1(B)-(C), are not relevant here.

Second, the Court has also considered whether Defendant's release would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served approximately 56 months of his sentence. The magnitude of Defendant's crimes warrants the sentence he received.[6] Despite Defendant's contentions that he is "not a danger to the community, but an advocate for treatment, support, and recovery services" (Doc. No. 141 at 2), a reduction in his sentence at this point would not serve any of the above considerations.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant. See § 3553(a)(6). Defendant received a 110-month sentence, below the range set by the Sentencing Guidelines, which Congress created in part to address sentencing disparities. The applicable guideline range was 168 to 210 months' imprisonment. To reduce Defendant's sentence further would not reflect the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

### 3. This Court Does Not Have Authority to Grant a Transfer to Home Confinement Under the CARES Act.

---

[6] In United States v. Pawlowski, the Third Circuit held the following regarding § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).

Finally, Defendant requests a transfer to home confinement under the CARES Act. (Doc. No. 141 at 1.) The Court lacks the authority to transfer Defendant to home confinement because the United States Bureau of Prisons has sole authority to make housing decisions for federal inmates. See e.g., Tapia v. United States, 564 U.S. 319, 331 (2011) (stating that the decision to transfer an inmate to home confinement is within the exclusive discretion of the Bureau of Prisons); Collins v. Warden Canaan FPC, No. 21-2878, 2022 WL 2752536, at *2 (3d Cir. July 14, 2022) (per curiam) (concluding the Bureau of Prisons has exclusive control over an inmate's placement in home confinement); United States v. Aguibi, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (per curiam) (finding that sentencing courts lack authority to grant defendant transfer to home confinement based on the fact that the Bureau of Prisons has the sole authority to place a prisoner in home confinement).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 141) will be denied. An appropriate Order follows.